IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2020

## ALFRED WHITEHEAD v. STATE OF TENNESSEE

Appeal from the Criminal Court for Davidson County
No. 2011-C-2526    Monte Watkins, Judge
_____

No. M2019-00790-CCA-R3-PC
_____

Alfred Whitehead, Petitioner, appeals from the post-conviction court's order denying relief. On appeal, Petitioner claims that he received ineffective assistance of counsel as a result of trial counsel's failure to object to "inflammatory and prejudicial statements" made by the State during opening statement and closing argument. We agree that the statements were improper and that trial counsel rendered deficient performance by failing to object, but we hold that Petitioner failed to "show that there [wa]s a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). We, therefore, affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jesse Lords, Nashville, Tennessee, for the appellant, Alfred Calvin Whitehead.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner was convicted by a jury of possession of 0.5 gram or more of cocaine with the intent to deliver in a Drug-Free School Zone, a Class A felony. The trial court determined that Petitioner was a Range II offender and sentenced him to serve twenty-eight years with a minimum required service of twenty-five years.

Petitioner appealed claiming that "(1) the evidence is insufficient to support the conviction, (2) the trial court erred in failing to grant a mistrial because a juror slept during a portion of the proof, (3) the trial court erred in permitting a police officer to testify as an expert witness, and (4) the sentence imposed constitutes cruel and unusual punishment." *State v. Alfred Calvin Whitehead*, No. M2014-00748-CCA-R3-CD, 2015 WL 4148363, *1 (Tenn. Crim. App. July 9, 2015), *perm. app. denied* (Tenn. Nov. 24, 2015). This court affirmed the trial court's judgment, and the supreme court denied permission to appeal. *Id.*

### Trial testimony

We summarize the recitation of facts from the direct appeal opinion as follows:

Metropolitan Nashville Police Department (MNPD) Officer Eric Knight testified that he was involved in a "buy-bust" operation involving an undercover purchase of drugs from a street-level drug dealer on May 19, 2011. Officer Knight stated that Petitioner was wearing "a white tank top and blue shorts." He testified that he saw a man approach Petitioner, the two men walk to a shadowy area between some buildings, the men engage in what appeared to be a "hand-to-hand transaction," and the men walk back in the direction from which they had come. Officer Knight and Detective Jeremy Smith approached Petitioner "within about one minute." Officer Knight recovered $777 from Petitioner's left pocket and a bag containing 4.3 grams of a substance that field tested positive for the presence of cocaine. Petitioner was arrested in the J.C. Napier housing area. Officer Knight testified that Petitioner gave a Nashville home address that was not near the arrest scene and that Petitioner stated he was unemployed. Officer Knight identified the bag he recovered from Petitioner that contained "twenty rocks" of crack cocaine. He said that a rock typically weighed about 0.2 gram and sold for $20. Using a map, Officer Knight identified the point of the arrest, which he said was "five hundred some odd" feet from Cameron Middle School.

MNPD Officer Robert Young testified that he was involved in the "buy-bust" operation as a member of the surveillance and takedown team. He said that an officer photocopied the money used in the buy in order to record the serial numbers. He said that $20 transactions were typical. While he was parked in an undercover vehicle, he saw Petitioner, who wore bright blue shorts and a white tank top, walking through a "cut" that led from a road behind homes in the J.C. Napier housing development toward Charles E. Davis Boulevard. After he received the takedown signal, he, Officer Knight, and Detective Smith apprehended Petitioner. He said that Petitioner had $777 in small denomination bills in his left pocket and that a bag containing a white rock substance fell to the ground when Officer Knight searched Petitioner's right pocket. The white rock substance field tested positive for the presence of cocaine base. He said that Petitioner's cash included a $20 bill with a serial number matching one of the $20 bills the police had

2

photocopied for the "bust-buy" operation. Officer Young testified that Petitioner did not have a weapon when he was arrested.

MNPD Lieutenant William Mackall was qualified as an expert witness in street-level drug sales. Lieutenant Mackall testified that drug users typically had no more than small amounts of money or "loose change." He said that he had never encountered a drug user who was in possession of four grams of crack cocaine and over $700 or who bought a bulk amount of crack cocaine to use over time. He opined that a person who lived "miles away" from where drugs are sold, who had over $700 cash on their person, who had more than a gram of cocaine in his possession, and who had no drug paraphernalia in their possession was a drug "seller" not a drug user.

Metro Nashville School Security Operations Manager Steve Keel testified that Cameron Middle School was located at 1034 First Avenue South. He identified the school in an aerial photograph. David Kline, the manager of the Metro Nashville Planning Department's Mapping Division, testified that he printed a map relative to this case. Referring to the map, he identified the property that comprised Cameron Middle School. He identified a computer-generated line representing a 1,000-foot boundary beyond the school property. He also identified the point of the arrest on the map and said it was approximately 591 feet from the school property.

Tennessee Bureau of Investigation Forensic Scientist Ellen Carpenter testified that she analyzed evidence collected in this case. She said that she analyzed a substance weighing 3.76 grams and determined that it was cocaine base. She said that she did not analyze an additional 1.7 grams of a substance submitted to the laboratory.

Petitioner did not offer proof.

*Alfred Calvin Whitehead*, 2015 WL 4148363, at *1-6.

The jury found Petitioner guilty of possession with the intent to deliver 0.5 gram or more of a substance containing cocaine in a Drug-Free School Zone.

### Post-Conviction Relief Petitions

On August 31, 2016, Petitioner filed a timely pro se petition for post-conviction relief. Appointed counsel filed an amended petition raising numerous issues. After counsel's motion to withdraw was granted, new post-conviction counsel was appointed and filed an "Amended and Supplemental Petition for Post-Conviction Relief," raising for the first time a claim that trial counsel was ineffective because counsel failed to object to the State's opening statement and closing argument.

*March 27, 2019 Post-Conviction Hearing*

The post-conviction court held an evidentiary hearing on March 27, 2019. Because Petitioner raises only a single claim on appeal – that trial counsel was ineffective by failing to object to the State's opening statement and closing argument – we will limit our recitation of the testimony at the post-conviction hearing to the testimony relevant to the issue on appeal. *See e.g., William Boatwright v. State*, No. E2017-00211-CCA-R3-PC, 2018 WL 2324369, at *4 (Tenn. Crim. App. May 22, 2018), *no perm. app. filed*.

Although the transcript of the post-conviction hearing states that the transcript of the State's opening statement or closing arguments were entered as Exhibit 4, the record on appeal does not include the transcript of the either the State's opening statement or closing arguments. The four Exhibits in the record on appeal consist of this court's opinion from the direct appeal, an Amended Notice of Enhanced Punishment from the sentencing hearing, the entire technical record from the direct appeal, and the trial transcript. The trial transcript simply provides in a parenthetical statement before the first witness was called that "opening statements were made" and in a parenthetical statement before the jury retired to deliberate that "[c]losing arguments were had[.]" The State, in its brief, argues:

> Although counsel for [P]etitioner asserts that the State made this statement at trial, he fails to provide any citation to the record where the statement was actually made. As an exhibit to the post-conviction hearing, counsel for [P]etitioner offered into evidence what he suggested were 'the opening and closing statements and the transcripts from the jury trial' as Exhibit 4. However, an examination of Exhibit 4 reveals that the opening statements of counsel for [P]etitioner and for the State were not transcribed. The appellant is responsible for preparing a record containing an accurate and complete account of what transpired with respect to those issues that form the basis of his appeal. Tenn. R. App. P. 24(b). Additionally, the failure of [P]etitioner to properly cite to the record where the actual opening statement may be found constitutes a waiver of the issue. *See* Tenn. Ct. Crim. App. R. 10(b).

Counsel for Petitioner apparently did not read the State's brief, read the brief but did not know what to do, read the brief and did not think it was important enough to move to supplement the record with the transcripts of the State's opening statement and closing arguments, or did not think it necessary to file a reply brief responding to the State's brief. However, for three reasons we will base our opinion on what post-conviction counsel read into the record. Those reasons are: (1) post-conviction counsel is an officer of the court, (2) there were no corrections or objections from the State to what post-conviction counsel read, and

4

(3) trial counsel responded to questions posed about what was read whether it was completely accurate or not.

Petitioner testified in general about trial counsel's performance. However, Petitioner was not questioned either during direct or cross-examination about trial counsel's failure to object to the State's opening statement and closing argument. Petitioner was the only witness called by post-conviction counsel.

On direct examination, the State did not question trial counsel about the State's opening statement or closing argument. During the cross-examination of trial counsel, post-conviction counsel was permitted to read from the transcript of the State's opening statement as a preface to questions he planned to ask trial counsel. Post-conviction counsel read:

> I've heard people say, does it really hurt anyone to sell drugs? People die every single day because of the drug world, and that includes here in the State of Tennessee. And the reason the State of Tennessee has seen to put around a safe zone around our schools a thousand feet to protect our children, drug dealers do not only sell drugs at night when the kids aren't around, they sell drugs whenever they want to sell drugs, they take revenge on each other whenever they want to. The school zone is a safe zone for our children. We don't need people shooting at each other while our children are walking to and from school, not only that, but there is a time that somebody – but there is a time that somebody has enough drugs that they're selling, let's say they sell to the police or they get frightened or they throw it down somewhere, well, they can't find it because it's dark. Well, the next day you have got school children who are walking to school, they're young, they're naive, will they pick it up? It absorbs through their skin, they're tiny, they have low, you know, body weight. It can make them sick. It can kill them, that's why we have our safe zone around our schools."

When questioned by post-conviction counsel, trial counsel agreed that he found the opening statement "objectionable" because no firearm was involved in Petitioner's case and that he did not raise an objection during the opening statement. Trial counsel testified that he should have been "jumping on the table" to object.

Post-conviction counsel then read a portion of the State's closing argument:

> And from what you've heard of the proof, you can really[,] honestly say what this man is doing on that day was every mother's nightmare. Well, excuse me, not every mother, not the mothers in Green Hills or Hermitage or Old Hickory or Goodlettsville or Whites Creek, only the

5

mothers in J[.]C[.] Napier Projects, he is their nightmare.  This man who spends all day selling his drugs to a large volume of buyers represents what, he's a walking target for robberies and shoot-outs.  A kid can't even stand at a school bus anymore waiting for a bus to pick him up, his mother knows – his mother knows he going to be safe.  The kids who live in those projects have to walk right by Claiborne Street to go to Cameron Middle School.  Who goes to a middle school?  What age kid?  The only defense they have is to run like a scared rabbit when they hear gunshots or see the drug-dealer, and they make a decision in there to do one of two things, either to run away from these men or join them.  When you can have the cool looking clothes and all the other things drugs offer to young men, yes, what we – what he was doing that day is every mother's nightmare.

Post-conviction counsel characterized the State's closing argument as a "safer streets" argument, and trial counsel agreed that he found this "safer streets" argument objectionable.  The following dialogue then took place:

> Post-conviction Counsel: And on these two, in the opening and the closing, you didn't object, right?
>
> Trial Counsel: I did not.
>
> Post-conviction Counsel: And so those two issues were not preserved for appeal?
>
> Trial Counsel: That's right.
>
> Post-conviction Counsel: And at no point was that able to go in front of the Court of Criminal Appeals for a proper adjudication on that improper behavior?
>
> Trial Counsel: I don't believe those issues were handled by the Court of [Criminal] Appeals.

### Post-Conviction Court's Order

Following argument, the post-conviction court took the case under advisement.  In its order denying the petition, the court noted that "Petitioner alleges that his conviction was invalid because he received ineffective assistance of counsel from trial counsel. [P]etitioner contends that counsel . . . failed object to prejudicial opening and closing statement."

The post-conviction court made no specific findings concerning the State's opening statement or closing argument or the trial counsel's failure to object thereto. However, the court generally concluded that:

> Petitioner has failed to demonstrate by clear and convincing evidence ineffective assistance of counsel in violation of a constitutional right to render his conviction and sentence void or voidable under the Post-Conviction Relief Act. The [c]ourt does not find [P]etitioner's testimony to be credible. Accordingly, the [c]ourt finds that Petitioner has failed to show that he was prejudiced by counsel's allegedly deficient conduct. *Strickland*, 466 U.S. at 694.

## ANALYSIS

### *Standard of Review*

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. Tenn. Code Ann. § 40-30-103 (2019); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2019); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (*quoting Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687; *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland,* 466 U.S. at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1966) (citing S*trickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

*Improper Opening Statement and Closing Argument*

Petitioner asserts that trial counsel rendered ineffective assistance by failing to object to the State's opening statement and closing argument. Before we determine whether trial counsel rendered ineffective assistance by failing to object, we must determine whether the opening statement and closing argument were improper.

The purpose of an opening statement is to set forth each side's "respective contentions, views of the facts and theories of the lawsuit." Tenn. Code Ann. § 20-9-301 (2011). Closing arguments are intended "to sharpen and to clarify the issues that must be resolved in a criminal case." *State v. Banks*, 271 S.W.3d 90, 130 (Tenn. 2008). In closing arguments each side should "present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *Id.* Although both prosecution and defense counsel in criminal cases are expected to be zealous advocates, "prosecutors must not lose sight of their duty to seek justice impartially[.] *State v. Hawkins*, 519 S.W.3d 1, 47 (Tenn. 2017). "[P]rosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence or make derogatory remarks or appeal to the jurors' prejudices." *Id.* at 131 (internal citations omitted).

In his brief, Petitioner refers to the State's opening statement and closing argument as "safer streets" arguments. "Safe streets" arguments have been characterized as "an improper emotional appeal to jurors' generalized fear of crime." *United States v. Smith*, 629 F. App'x 135, 136-37 (2d Cir. 2015). Basically, a "safe streets" argument is intended to suggest to the jury that the defendant or the crime is so dangerous that the jury must convict the defendant "to protect public safety[.]" *Id.* at 136.

This court has recognized five general areas of improper closing argument by the State:

1. "intentionally misstat[ing] the evidence or mislead[ing] the jury as to the inferences it may draw[;]"

2. "express[ing] a personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant[;]"

3. making an argument "calculated to inflame the passions or prejudices of the jury[;]"

4. making an argument "which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the

8

accused under the controlling law, or by making predictions of the consequences of the jury's verdict[;]" and

5. "intentionally refer[ring] to or argu[ing] facts outside the record unless the facts are matters of common public knowledge."

*State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

We determine that the opening statement and the closing argument were improper because they were "calculated to inflame the passions or prejudices of the jury" and that the prosecutor referred to or argued facts "outside the record," some of which were not "matters of common public knowledge." *Id.* The "safer streets" argument made by the prosecution strayed too far "from the evidence and the reasonable inferences to be drawn from the evidence." *Banks*, 271 S.W.3d at 131.

### *Failure to Object to Improper Argument*

Petitioner claims that trial counsel's failure to object to the "inflammatory and prejudicial" opening statement and closing argument waived appellate consideration of that issue on appeal and that counsel's failure to object "was below the objective standard of reasonableness under professional norms." Appellate courts are not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). In this case, because there was no contemporaneous objection to what trial counsel characterized during the post-conviction hearing as "objectionable" remarks made by the prosecutor during opening statement and closing argument, trial counsel waived plenary review of the improper remarks during opening statement and closing argument on direct appeal. The transcripts of the opening statement and closing argument were not included in the record in the direct appeal, and no claim was raised that the improper remarks constituted "plain error." *See* Tenn. R. App. P. 36(b).

We determine that trial counsel's failure to object to the improper opening statement and closing argument fell below an objective standard of reasonableness under prevailing professional norms." *Goad v.* 938 S.W.2d at 370. Petitioner has carried his burden to show that counsel's performance was deficient under the first prong of *Strickland. Strickland*, 466 U.S. at 687.

### *Second prong of Strickland*

"A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *Banks*, 271 S.W.3d at 131. "An improper closing argument will not constitute reversible error unless it is so inflammatory or improper that i[t] affected the outcome of the trial to the defendant's prejudice." *Id.* at 131; *see Harrington v. State*, 385 S.W.2d 758, 759 (1965) (the "general test" for determining

9

whether there is reversible error "is whether the conduct could have affected the verdict to the prejudice of the defendant"). Tennessee courts have recognized five factors that must be considered in determining if the improper arguments had a prejudicial effect upon the verdict:

(1) the conduct complained of in light of the facts and circumstances of the case;

(2) the curative measures undertaken;

(3) the intent of the prosecutor in making the improper remarks;

(4) the cumulative effect of the improper conduct and any other errors in the record; and

(5) the relative strength or weakness of the case.

*Hawkins*, 519 S.W.3d at 48 (citing *State v. Jackson*, 444 S.W.3d 554, 591 n.50 (Tenn. 2014)).

Factors (2) and (4) do not provide much guidance for this case. No curative measures were requested or undertaken, and we have reviewed the opinion from the direct appeal which mentioned no errors on the part of the trial court that could provide a cumulative effect. *Alfred Calvin Whitehead*, 2015 WL 4148363, at *1.

We will consider factor (5) before addressing factors (1) and (3). The evidence presented at trial proving that Petitioner was in possession of 0.5 gram or more of cocaine with the intent to deliver in a Drug-Free School Zone was overwhelming. MNPD Officer Knight observed a male approach Petitioner, who was wearing "a white tank top and blue shorts." He saw the two men walk to a shadowy area between some buildings and engage in what appeared to be a "hand-to-hand transaction" and then walk back in the direction from which they had come. Officer Knight and Detective Smith approached Petitioner "within about one minute." Officer Knight recovered $777 from the Petitioner's left pocket and a bag containing 4.3 grams of a substance that field tested positive for the presence of cocaine. Officer Knight testified that Petitioner gave a Nashville home address that was not near the arrest scene and stated that Petitioner was unemployed. Petitioner was arrested in the J.C. Napier housing development. Officer Knight identified the bag containing "twenty rocks," each of which typically would weigh about 0.2 gram and be sold for $20, that he recovered from Petitioner. Using a map, Officer Knight identified the point of the arrest, which he said was across the street and "five hundred some odd" feet from Cameron Middle School. Officer Knight's testimony concerning the "buy-bust" operation was corroborated by the testimony of Officer Young and Detective Smith. Metro Nashville School Security Operations Manager Keel testified that Cameron Middle School was located at 1034 First Avenue South. He identified the school in an aerial photograph. David Kline, the manager of the

Metro Nashville Planning Department's Mapping Division, identified the point of the arrest on the map and said it was approximately 591 feet from the Cameron Middle School property.

Concerning factor (1), the State did argue "facts and circumstances" that were not proven at trial, although the argument was of a general character not directly mentioning Petitioner. For example, there was no weapon shown to be involved in Petitioner's case, therefore the statements that Petitioner was "a walking target for robberies and shoot-outs" and that the "only defense [kids] have is to run like a scared rabbit when they hear gunshots" were improper. Although improper, we determine in light of the overwhelming evidence of guilt, any impropriety in the opening statement and closing argument did not affect the verdict to the prejudice of the Petitioner. Concerning factor (3), we assume the intent of the prosecutor was to convince the jury that Petitioner was a drug dealer involved in an illegal and sometimes dangerous activity near a middle school. Although the prosecutor's statements were improper, they were not "so inflammatory or improper" so as to affect the "outcome of the trial to the Petitioner's prejudice," nor did they deprive Petitioner of a fair trial. *Banks*, 271 S.W.3d at 131. In other words, the failure to object to these statements did not create a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

CONCLUSION

Although we agree with Petitioner that the State's opening statement and closing argument were improper and that trial counsel's performance was deficient in that he failed to object, we hold that Petitioner has failed to show that there was a reasonable probability that "but for counsel's unprofessional errors, the result" of Petitioner's jury trial would have been different. Petitioner has failed to satisfy the second prong of *Strickland*. *Id*. The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE